IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEREK M. JOHNS,                              :
                                             :
                      Petitioner,            :        CIVIL ACTION NO. 20-1055
                                             :
         v.                                  :
                                             :
MARK CAPOZZA; THE DISTRICT                   :
ATTORNEY OF THE COUNTY OF                    :
BUCKS; THE ATTORNEY GENERAL                  :
OF THE STATE OF PENNSYLVANIA,                :
                                             :
                      Respondents.           :

## MEMORANDUM OPINION

Smith, J.                                                      November 12, 2021

The petitioner was charged with criminal homicide for shooting another man in the face from close range with a pistol. The petitioner eventually proceeded to a jury trial, during which he argued that, *inter alia*, he had not killed the victim; instead, the victim committed suicide. The jury rejected this claim and determined that the petitioner had committed third-degree murder. The trial court sentenced the petitioner to a term of imprisonment that could last a maximum of 40 years.

The petitioner unsuccessfully challenged his conviction and sentence on direct appeal and post-conviction collateral review. He has now filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, where he raises numerous claims of ineffective assistance by his trial counsel and errors by the trial court. This court referred the petition to a learned Magistrate Judge, who has issued a report in which she recommends that the court deny the petition and decline to issue a certificate of appealability. The petitioner has filed objections to five of the Magistrate Judge's conclusions. After thoroughly reviewing these objections and the report and recommendation, the court concludes that none of the objections have merit. Accordingly, the court will overrule the

objections, approve and adopt the report and recommendation, deny the habeas petition, and decline to issue a certificate of appealability.

## I.      PROCEDURAL HISTORY

In June 2006, the petitioner, Derek M. Johns ("Johns"), killed the victim, William Jones ("Jones"), by shooting him from close range in the mouth with a semi-automatic pistol.[1] *See*

---

[1] The trial court described the relevant facts in the case as follows:

> On June 16, 2006, at approximately 7:00 p.m., [Johns] was walking through Creekside Apartments (hereinafter "Creekside") in Bensalem, Bucks County, P[ennsylvania] with [Jones]. [Johns] shot [Jones] in the mouth with a Browning semiautomatic pistol chambering a .22 long rifle cartridge, placed the pistol in [Jones's] hand, and fled the scene on foot. Minutes after the shooting, [Johns] was stopped by police, identified by a witness and was arrested.
>
> K.A.P., a 14[-]year[-]old witness[,] was playing cricket on a field at Creekside with several friends when he noticed the two men walking on the sidewalk within a few hundred feet of the cricket field. K.A.P. testified that he saw the two black males walking shoulder to shoulder on the sidewalk when one of the males, who was wearing a white t-shirt, pulled a gun from his waistband and pointed it at [Jones's] stomach and head. According to his testimony, K.A.P. heard a loud noise as the male in the white shirt fired the gun at the other's head. K.A.P. testified that after the man in the white shirt shot [Jones], he placed the gun into the falling man's hand, screamed "oh shit, oh shit" and ran away.
>
> K.I.P. was another 14[-]year[-]old witness who was playing cricket when the shooting occurred. K.I.P. testified that he saw the two men walking side by side, turned away to play cricket, heard a loud pop[,] and when he turned towards the noise, he saw one man on the ground, and another man running away. K.I.P. testified that the man wearing a white t-shirt and a black "doorag" (a tight fitting knit cap) ran in the direction of the Pathmark store, which is located on Dunks Ferry Road.
>
> Within minutes, Bensalem Township Police Officer Thomas Jackson responded to Creekside after receiving a dispatch report that there was a victim at Creekside who had been pistol whipped and/or shot in the head. As Officer Jackson pulled up to the scene, he saw [Jones] lying on the sidewalk between two buildings. The officer approached . . . Jones and noticed that he was lying on his side with a firearm in his hand, and the officer immediately kicked the weapon out of . . . Jones'[s] hand as a safety precaution. After initially noting that the wound to . . . Jones appeared to be self-inflicted, the officer was approached by a witness who informed him that there was another man who had fled the scene.
>
> Officer Samuel Karley also responded to the scene of the shooting at Creekside and began interviewing witnesses. The officer approached K.I.P. for an interview and learned that K.I.P. felt that he could identify the man he saw running from the scene of the crime. Officer Karley took K.I.P. into his patrol car and began driving around the Creekside neighborhood looking for the man that K.I.P. had seen flee the scene of the shooting.
>
> During this same time frame, Sergeant William McVey of the Bensalem Township Police was responding to Creekside when he heard a description of the suspect over his radio. As Sergeant McVey neared Creekside, he saw a man fitting the description of the suspect walking west on Dunks Ferry Road approximately one-quarter to one-half mile away from the scene of the shooting. Officer McVey testified that the man was wearing a white t-shirt and a black skull-cap and identified [Johns] as the man that he saw walking on Dunks Ferry Road. Sergeant McVey testified that he activated his lights, notified dispatch that he was exiting the vehicle to engage a suspect[,] and yelled for [Johns] to stop, make his hands visible[,] and come over to the vehicle. Sergeant McVey then asked [Johns] several questions regarding the incident at Creekside and [Johns] denied that he was at the

Answer, Ex. A., Mem. Op. at 2, *Commonwealth v. Johns*, No. 3060 EDA 2007 (Pa. Super. July 16, 2009) (citation omitted) ("*Pa. Super. Op. I*").[2] On May 18, 2007, a jury sitting in the Bucks County Court of Common Pleas convicted Johns of third-degree murder for killing Jones. *See id.* at 5 (indicating that "[t]he matter proceeded to a jury trial, at the conclusion of which the jury convicted [Johns] of third-degree murder"); Pet. Under 28 U.S.C. § 2254 for Writ of Habeas by a Person in State Custody ("Pet.") at ECF p. 1, Doc. No. 1 (indicating that Johns was convicted on May 18, 2007). Based on this conviction, the trial court sentenced Johns to a minimum of 16 years to a maximum of 40 years' incarceration on May 24, 2007. Pet. at ECF p. 1.

Although Johns timely filed post-sentence motions, the trial court denied them on October 31, 2007. *See Pa. Super. Op. I* at 5. After the denial of his post-trial motions, Johns filed a direct

---

scene or knew anything about the shooting. Sergeant McVey conducted a pat[-]down of [Johns's] outer clothing for officer safety when he felt a rectangular object in [Johns's] pocket. In order to make sure that the object did not have the potential to be used as a weapon, the Sergeant retrieved the item, which proved to be a cellular phone, from [Johns's] pocket.

During the pat down, Sergeant McVey received a radio transmission which notified him that Officer Karley had an eyewitness in his vehicle and that he would be bringing the witness to the stop location to attempt an identification. Sergeant McVey placed [Johns] in handcuffs and moved him to the rear of the car in order to see if a positive identification could be made.

According to K.I.P., as Officer Karley approached Sergeant McVey's vehicle, K.I.P. identified [Johns] from inside the squad car based on the clothes that [Johns] was wearing. Officer Karley testified that his patrol car was approximately 15 feet from [Johns] when K.I.P. said "that's him." Officer Karley then asked K.I.P. if he was 100% sure and K.I.P. affirmed his identification. Officer Karley notified Sergeant McVey via radio that K.I.P. had positively identified [Johns] and Sergeant McVey immediately advised [Johns] that he had been identified as the person fleeing the scene, and that he would be going back to the station.

Officer Mark Zdanowitz, who was already at the scene of the identification, placed [Johns] in his squad car and began driving to the station when [Johns] began yelling and questioning why he was being arrested. Officer Zdanowitz informed [Johns] that he was being detained for an investigation and that the Detectives wanted to talk to him at headquarters. At that point, the officer testified that [Johns] yelled, "I didn't do anything. I didn't shoot him, he shot himself." [Johns] also indicated that he would consent to police testing in order to prove his innocence.

Shortly after [Johns] arrived at the station, Corporal Greg Young administered a gun powder residue kit on [Johns'] hands. In addition, Corporal Young administered a gun powder residue test later that night on [Jones]'s hands.

Answer to Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus ("Answer"), Ex. B, Tr. Ct. Op. at 1–4, *Commonwealth v. Johns*, No. CP-09-CR-5225-2006 (Bucks Cnty. Ct. Com. Pl.), Doc. No. 7 (internal citations to record omitted) (most alterations in original). The court notes that the trial court's opinion is located at Doc. No. 7 at ECF pp. 80–146.

[2] The Superior Court's memorandum opinion is located at Doc. No. 7 at ECF pp. 56–78.

appeal to the Superior Court of Pennsylvania, where he claimed: (1) the police lacked reasonable suspicion to justify the initial investigative detention because there was only a vague description of the individual who left the scene and there was no indication that a crime had been committed insofar as Jones had committed suicide; (2) the trial court erred in admitting into evidence a letter which was handwritten by Jones and found in another individual's vehicle on the day of the shooting;[3] (3) the trial court erred in permitting a police detective to offer an expert opinion on the value of a certain amount of cocaine; (4) the trial court improperly limited the testimony of a forensic pathologist from summarizing an autopsy report, which essentially precluded the forensic pathologist from testifying that he considered evidence suggesting the gun was planted in Jones's hand; (5) the trial court erred in precluding the forensic pathologist from offering an opinion as to whether the letter found in another individual's vehicle was a suicide note; (6) there was insufficient evidence to sustain his conviction; (7) the jury's verdict was against the weight of the evidence; and (8) the trial court erred in instructing the jury insofar as the court (a) failed to give his proposed instruction that "the raising of the defense of suicide does not impose any burden whatsoever on the defense, but rather this evidence, **even if not wholly believed**, is relevant in determining whether the prosecution has established its burden beyond a reasonable doubt," (b)

---

[3] This other vehicle belonged to Jessica Fontanos ("Fontanos"). Tr. Ct. Op. at 18. Jones had used this vehicle shortly before his death. *See id.* The letter stated:

> Yo, Pops, to break it cut and dry, I don't know what the fuck is coming but it is. I stole a quarter key of coke from Derek Africa Johns and a boy named Hollywood from Bristol, PA. Hollywood live in Bloomsdale section. They have information on us. How it was provided is anyone's guess because before I took it they never knew where I lived. But Derek's brother is a guard at BCCF. So I'm thinking that's how. They called Jessica's crib a few times demanding shit. I know where they're [sic] mothers stay but I could not keep waiting to see when to act on anything. Anyhow, pops, I got all this little bit of info: [phone numbers deleted for purposes of this opinion][.] The bag contains items of theirs, Africa and Hollywood, that would let someone know that our knowing of each other is no myth. There have been a lot of Puerto Rican faces on my back. Funny since I robbed an African and Nigga. You have to change names. Social Security numbers if possible, jobs, etcetera. Hopefully what I did bought ya'll some time.

*Id.* at 18–19 (footnote omitted).

4

failed to instruct the jury on the offense of possession of a firearm, (c) should have instruction on only first-degree murder and not third-degree murder, (d) improperly highlighted the Commonwealth's theory of flight and consciousness of guilt, and (e) provided an inadequate and untimely cautionary instruction regarding prosecutorial misconduct committed during the district attorney's closing argument. *Id.* at 1–2, 5, 9, 10, 13, 16, 17, 21, 22.

On July 16, 2009, the Superior Court rejected Johns's arguments and affirmed his judgment of sentence via an unpublished opinion. *See generally id.* Johns then filed a petition for allowance of appeal with the Supreme Court of Pennsylvania on August 13, 2009. *See* Docket, *Commonwealth v. Johns*, No. 598 MAL 2009 (Pa.), *available at*: https://ujsportal.pacourts.us/Report/PacDocketSheet?docketNumber=598%20MAL%202009&d nh=GXZYhQ0PqTAqBG9ZAumibA%3D%3D. The Court denied the petition on March 9, 2010. *See id.*; *Commonwealth v. Johns*, 990 A.2d 728 (Table) (Pa. 2010).

After unsuccessfully challenging his conviction and sentence on direct appeal, Johns pursued post-conviction collateral relief by timely filing a *pro se* petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S. §§ 9541–46, on November 1, 2010. *See Commonwealth v. Johns*, No. 2022 EDA 2018, 2019 WL 3628794, at *2 (Pa. Super. Aug. 6, 2019). After almost eight years, four amended PCRA petitions, two evidentiary hearings, two appointments of counsel, the hiring of a forensic psychiatrist to perform a "psychiatric autopsy" of Jones, and numerous submissions by the parties, the PCRA court denied Johns's PCRA claims on June 29, 2018. *See id.* at *2–3. Johns timely appealed from the PCRA court's denial of his PCRA petition to the Superior Court on July 19, 2018. *See* Docket, *Commonwealth v. Johns*, No. 2022 EDA 2018 (Pa. Super.) ("Pa. Super. PCRA Docket"), *available at*:

https://ujsportal.pacourts.us/Report/PacDocketSheet?docketNumber=2022%20EDA%202018&d

nh=Vyjgme99tTDzZyCTHXHSrQ%3D%3D.

On appeal, Johns raised five issues for the Superior Court's consideration:

1. Was trial counsel ineffective in failing to present expert testimony that the writings of the deceased were suicide notes?

2. Was trial counsel ineffective in failing to consult with [Johns] when the jury requested to review the autopsy [report] and preliminary hearing [notes of testimony] during deliberations?

3. Was trial counsel ineffective in failing to challenge the application of the five[-]year mandatory sentence under 42 Pa.C.S. § 9712 on constitutional grounds?

4. Was trial counsel ineffective in failing to challenge the competency of K.A.P. and in failing to argue taint?

5. Was trial counsel ineffective in failing to properly object to the trial court's jury charge on voluntary manslaughter?

*Johns*, 2019 WL 3628794, at *3–4 (alterations in original).

The Superior Court affirmed the denial of Johns' PCRA petition on August 6, 2019. *See*

*id.* at *4–13. Johns then filed a petition for allowance of appeal to the Supreme Court on September

3, 2019, and the Court denied the petition on February 10, 2020. *See* Pa. Super. PCRA Docket.

Johns filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this court

on February 20, 2020.[4] *See* Doc. No. 1. He also submitted a motion for the appointment of counsel.

*See* Doc. No. 2. On March 12, 2020, the court referred the case to United States Magistrate Judge

Marilyn Heffley for the preparation of a report and recommendation. *See* Doc. No. 4. On March

23, 2020, Judge Heffley entered an order denying Johns's motion for appointment of counsel

without prejudice to revisit it once the parties filed their submissions in the case. *See* Doc. No. 6.

---

[4] The federal "prisoner mailbox rule" provides that a *pro se* prisoner's petition is deemed filed "at the time petitioner delivered it to prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 275–76 (1988). Here, Johns included a declaration that he provided his section 2254 petition in the prison mailing system on February 20, 2020. See Doc. No. 1 at ECF p. 23. The court has used this date as the filing date.

The respondents filed an answer to Johns's section 2254 petition on April 13, 2020. *See* Doc. No. 7. On May 1, 2020, John J. Fiorvanti, Jr., Esquire, entered an appearance on behalf of Johns.[5] *See* Doc. No. 8. On the same date, Attorney Fiorvanti, on behalf of Johns, filed a motion for an extension of time to file an amended habeas petition and a reply and clarification to the respondents' answer. *See* Doc. No. 9. On May 4, 2020, Judge Heffley granted the motion, giving Johns 60 days to amend his habeas petition and file a reply and clarification to the respondents' answer. *See* Doc. No. 10. Johns filed a "Reply/Clarification to Respondent's [sic] Answer in Opposition to Habeas Corpus Relief, Motion Seeking Leave to Amend, and Supporting Memorandum of Law" on June 29, 2020. *See* Doc. No. 13.

On November 23, 2020, Judge Heffley issued a report and recommendation ("R&R"). *See* Doc. No. 15. In the R&R, Judge Heffley identified Johns's claims as follows:

1.   The trial court violated his constitutional rights by admitting one of the victim's handwritten notes, which was found in Fontanos' vehicle;

2.   The trial court violated his constitutional rights by precluding Dr. Richard Callery's ("Dr. Callery") opinion that the victim's two handwritten notes were suicide notes;

3.   Trial counsel was ineffective in failing to hire a forensic psychiatrist to testify that the victim's two handwritten notes were suicide notes;

4.   The trial court violated his constitutional rights by giving the jury inconsistent, incorrect, and biased jury instructions regarding the degrees of homicide;

5.   The trial court violated his constitutional rights by failing to provide the "essential substance" of the proposed suicide jury instruction;

6.   The trial court violated his constitutional rights by admitting testimony from six police officers about a radio call concerning a "pistol whipping";

7.   Trial counsel was ineffective in failing to object to the trial court's voluntary manslaughter jury instructions;

---

[5] Attorney Fiorvanti had also served as Johns' counsel during most of the PCRA proceedings.

8.      The trial court violated his constitutional rights by failing to timely and adequately address prosecutorial misconduct that was committed during the Commonwealth's closing argument;

9.      Trial counsel was ineffective in failing to consult with Johns about the jury's request to review the autopsy report and child witness K.A.P.'s preliminary hearing transcripts during its deliberations;

10.     Trial counsel was ineffective in failing to challenge the competency of child witness K.A.P., and to argue that K.A.P.'s testimony was tainted; and

11.     The trial court violated his constitutional rights by admitting testimony from three witnesses, Fontanos, Darren Mitchell ("Mitchell"), and Andre Coleman ("Coleman"), regarding telephone calls Johns made in the week preceding the murder.

R. & R. at 6 (citations omitted). After thoroughly analyzing Johns's claims, Judge Heffley recommended that this court deny the habeas petition. *See id.* at 10–36.

Johns timely filed objections to the R&R on March 17, 2021.[6] *See* Doc. No. 18. In the objections, Johns clarified that he was objecting to only "five aspects of the R&R." Pet'r's Objs. to the Magis. Judge's R. & R. ("Objs.") at 2, Doc. No. 18. First, he objects to Judge Heffley's determination that the admission of the handwritten note found in Fontanos's car did not violate his due process or confrontation rights. *See id.* at 2–8. Second, he objects to Judge Heffley's conclusion that his claim that the trial court violated his constitutional rights by precluding Dr. Richard Callery's opinion that the victim's two handwritten notes were suicide notes was procedurally defaulted and otherwise lacked merit. *See id.* at 8–11. Third, he objects to Judge Heffley's rejection of his claim that his trial counsel was ineffective for failing to hire an expert to establish that the victim's two handwritten notes were suicide notes. *See id.* at 11–25. Fourth, he objects to Judge Heffley's determination that the trial court's jury instructions on voluntary

---

[6] Although Johns did not file objections within 14 days after Judge Heffley issued the R&R, he requested that the court extend the time for him to file objections. *See* Doc. No. 16. The court granted this request, *see* Doc. No. 17, and Johns later timely filed objections.

manslaughter were proper. *See id.* at 25–28. Finally, he objects to Judge Heffley's conclusion that his trial counsel was not ineffective in not adequately objecting to the trial court's jury instructions on voluntary manslaughter because the claim lacked arguable merit. *See id.* at 28–30.

The respondents did not file a response to the objections. As such, the objections are ripe for review.

## II.    DISCUSSION

### A.    Standard of Review

Upon timely and specific objection by a party to a portion of a report and recommendation issued by a magistrate judge, the district court "is obliged to engage in *de novo* review of only those issues raised on objection." *Morgan v. Astrue*, Civ. A. No. 08-2133, 2009 WL 3541001, at *2 (E.D. Pa. Oct. 30, 2009) (citing 28 U.S.C. § 636(b)(1) and *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989)). In conducting this review, the court may "accept, reject, or modify, in whole or in part," the report's findings and recommendations. *Id.* (quoting 28 U.S.C. § 636(b)(1)).

### B.    Analysis

#### 1.    Objection To Judge Heffley's Determination That The Trial Court's Admission Of The Handwritten Note Found In Fontanos's Vehicle Did Not Violate His Constitutional Rights

In his objections to the report and recommendation, Johns first argues that Judge Heffley erred in concluding that the trial court's admission of the handwritten note found in  Fontanos's car (the "Fontanos Note") did not violate his constitutional rights. *See* Objs. at 2–8. Specifically, he argues that the Fontanos Note was a testimonial statement that was "prepared . . . in a non-emergency situation" for the primary purpose of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Id.* at 3. He also argues that the trial court improperly admitted the Fontanos Note under the "state of mind" exception to the hearsay rule

because this exception only "applies to the declarant's state of mind," and that Jones's state of mind was not at issue in this case. *See id.* at 4. Finally, he argues that the admission of the Fontanos Note "so infected the entire trial that the resulting conviction violate[d] due process," thus permitting review of his claim on federal habeas review despite his reliance on state evidentiary law. *Id.* at 6.

Johns's arguments regarding the admission of the Fontanos Note all lack merit. As an initial matter, his claim that the Fontanos Note was testimonial in nature is entirely conclusory and unsupported by the evidence. As Judge Heffley noted in the R&R, the note was addressed to Jones's father and left in Ms. Fontanos's car, where it was likely to be found by his family or his girlfriend rather than by a law enforcement official. *See* R. & R. at 10. Johns does not dispute that generally, such "out-of-court statements to family or friends are not testimonial statements that fall within the purview of the Confrontation Clause." *Williams v. Superintendent, SCI Greene*, Civ. A. No. 11-4319, 2012 WL 6062507, at *11 (E.D. Pa. June 15, 2012) (citing *United States v. Berrios*, 676 F.3d 118, 128 (3d Cir. 2012); *Wilson v. Banks*, Civ. A. No. 10-1884, 2011 WL 2746105, at *5 n.12 (E.D. Pa. June 20, 2011)). Moreover, Johns does not provide any reason to suggest that the note was intended to "creat[e] an out-of-court substitute for trial testimony," *Ohio v. Clark*, 576 U.S. 237, 245 (2015) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)), beyond his conclusory statement that it was made for the purpose of a later criminal prosecution. *See* Objs. at 3. Thus, the court agrees with Judge Heffley that the note was non-testimonial in nature and that its admission did not violate Johns's Confrontation Clause rights.

Johns's argument that the Fontanos note was improperly admitted under the "state of mind" exception to the hearsay rule is equally unavailing. In support of this argument, Johns cites to

*United States v. Brown*, 490 F.2d 759 (D.C. Cir. 1973) and *Giles v. United States*, 432 A.2d 739, 746 (D.C. 1981). *See id.* at 4–6.

Regarding *Brown*, this case stands for the proposition that in homicide cases, a declarant's hearsay statement about fear of the defendant may be relevant, and thus admissible, in at least "three rather well-defined categories in which the need for such statements overcomes almost any possible prejudice." *Id.* at 767. These situations include when (1) the defendant defends on the ground that he killed the deceased in self-defense, (2) the defendant claims that the deceased committed suicide, and (3) there is a "claim of accidental death, where, for example, [the] defendant's version of the facts is that the victim picked up defendant's gun and was accidentally killed while toying with it." *Id.* In the latter situation, "the deceased's statements of fear as to guns or of defendant himself (showing he would never go hear defendant under any circumstances) are relevant in that they tend to rebut this defense." *Id.*

Johns seizes upon a portion of this last sentence, arguing that evidence of the Fontanos Note is "only admissible if it were to show that the deceased would 'never go near the defendant under any circumstances,'" Objs. at 5 (quoting *Brown*, 490 F.2d at 767), and that "it is undisputed . . . that the deceased in fact went near and to [Johns] on the day of his death voluntarily." *Id.* (citation omitted). Notwithstanding Johns's mischaracterization of the D.C. Circuit's statement and the fact that he has not asserted a defense of "accidental death," this claim fails because Johns asserted a defense that Jones committed suicide in the trial court proceedings. *See id.* ("Magistrate Judge Heffley ignores the fact that nothing in the [Fontanos Note] in any way is inconsistent with a suicidal bent."); *see also* Pet'r's Reply/Clarification to Resp't's Answer in Opp'n to Habeas Corpus Relief, Mot. Seeking Leave to Amend, and Supporting Mem. of Law at 19, Doc. No. 13 ("[Johns]'s defense at trial was that William Jones committed suicide because he had stolen drugs

from Johns and feared for the safety of his family and that of his girlfriend."). Although it is not binding on this court, *Brown* instructs that under these circumstances, evidence of the victim's state of mind is relevant—so relevant, in fact, that it "overcomes almost any possible prejudice." 490 F.2d at 767. Moreover, having been admitted under a firmly-rooted exception to the hearsay rule, the Fontanos Note also has "sufficient guarantees of reliability" to satisfy the Confrontation Clause. *See White v. Illinois*, 502 U.S. 346, 356 (1992).

Similar to Johns's reliance on *Brown*, his reliance on *Giles* is also misplaced. Johns asserts that *Giles* "instructs that Hearsay statements of a decedent indicating fear of the defendant are admissible under the state-of-mind exception; hearsay evidence of a prior specific act by the accused is not." Objs. at 5. *Giles* is inapplicable because the Fontanos Note does not contain "hearsay evidence of a prior specific act by the accused." 432 A.2d at 745. Thus, Judge Heffley correctly concluded that the Fontanos Note was properly admitted under the state-of-mind exception to the hearsay rule.

Finally, Johns argues that the Fontanos Note was unduly prejudicial and that the limiting instruction provided by the trial court was insufficient. *See* Objs. at 6–7. In so arguing, Johns first appears to cast doubt on the jury's ability to consider the note for the limited purpose for which it was introduced. *See id.* at 6 ("The incredulity and disingenuousness of the claimed limited use of this note is emphasized when this court carefully examines the curative instruction given by Judge Heckler."). However, the court presumes that "jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." *United States v. Olano*, 507 U.S. 725, 740 (1993) (quoting *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985)). Johns has

provided no reason for the court to depart from this well-established presumption, and it therefore declines the invitation to do so.

Johns also argues, without basis or elaboration, that the Fontanos Note was improperly used to suggest a motive on his part, the prejudicial effect of which was enhanced by the admission of various telephone calls during the trial. *See* Objs. at 7. The record is clear that the trial court admonished the jurors that the statements in the Fontanos Note "are relevant to [Jones's] state of mind and his state of mind only." Tr. Ct. Op. at 23 (citing Notes of Testimony from May 7, 2007, Vol. II, pp. 202–07). Johns effectively asks the court to reject the presumption that the jurors followed the limiting instructions provided by the trial court, and the court again declines to do so. In conclusion, Jones has failed to demonstrate that the admission of the Fontanos Note arises to the level of a federal constitutional violation. Because Johns's claims regarding the Fontanos Note all lack merit, the court overrules Johns's first objection to the R&R.

**2.      Objection To Judge Heffley's Conclusion That His Claim That The Trial Court Violated His Constitutional Rights By Precluding Dr. Callery's Opinion That Jones's Two Handwritten Notes Were Suicide Notes Was Procedurally Defaulted And Otherwise Lacked Merit**

In his second objection to the R&R, Johns contends that his claim regarding the trial court's preclusion of Dr. Callery's testimony is not procedurally defaulted and that it is meritorious. As to procedural default, Johns argues that he placed the state courts on notice of his federal constitutional claim in both his Pennsylvania Rule of Appellate Procedure 1925(b) statement and his brief before the Superior Court of Pennsylvania.[7] *See* Objs. at 9. With regard to the merits of

---

[7] Under Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure,

> [i]f the judge entering the order giving rise to the notice of appeal . . . desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal . . . .

Pa.R.A.P. 1925(b).

his claim, Johns asserts that the trial court's decision to exclude Dr. Callery's testimony despite his experience as a medical investigator while at the same time allowing the Commonwealth's expert to opine on whether the notes were suicide notes violated his right to a fair trial and was not harmless error. *See id.* at 8–10.

The court agrees with Judge Heffley's conclusion that this claim has been procedurally defaulted. In general, a federal court may consider a habeas petition only after the petitioner has exhausted available state remedies, which means he must "'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). When a petitioner has failed to exhaust a claim by failing to "fairly present" it to the state courts, the claim is considered to have been procedurally defaulted if the petitioner may no longer seek further relief on the claim in state court. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999). In such cases, exhaustion is futile, and the court may only reach the merits of the claim if the petitioner demonstrates "cause and prejudice" or a "fundamental miscarriage of justice." *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000).

Here, Johns did not "fairly present" his federal claim to the state courts. Although Johns invoked his "rights to present defense evidence, due process rights, and fair trial rights guaranteed by the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution" in his Rule 1925(b) Statement, *see* Answer, Ex. G, Statement of Matters Complained of on Appeal at ¶ 82, he was required—but failed—to raise the claim in his Superior Court brief. *See Saunders v. Mahally*, Civ. A. No. 16-cv-2690, 2016 WL 11267192, at *5 n.6 (E.D. Pa. Dec. 29, 2016) (finding petitioner's prosecutorial misconduct claim to be unexhausted despite being mentioned in Rule

1925(b) statement because it was not raised in petitioner's appellate brief before the Superior Court); *see also Glenn v. Wynder*, Civ. A. No. 06-513, 2012 WL 4107827, at *42 (W.D. Pa. Sept. 19, 2012) (claim raised in rule 1925(b) statement was unexhausted because petitioner "did not pursue it on appeal by including it within his appellate brief").

The court recognizes that to fairly present a federal claim to a state court, a habeas petitioner "need not have cited 'book and verse' of the federal constitution." *Briston v. Wholey*, 307 F. App'x 616, 618 (3d Cir. 2009) (per curiam) (quoting *McCandless*, 172 F.3d at 261). For example, he may present his claim through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*McCandless*, 172 F.3d at 261 (quoting *Evans v. Ct. Common Pleas, Del. Cnty., Pa.*, 959 F.2d 1227, 1232 (3d Cir. 1992)).

Here, Johns contends that he adequately presented his claim in his Superior Court brief, pointing to a single passage in which he argues, *inter alia*, that "[t]his misunderstanding of the uncontested evidentiary record cannot withstand review not only because it is fundamentally unfair and it denies Appellant his due process right to present evidence, but also because the court failed to show similar restraint when allowing extended testimony by Commonwealth experts on these issues." *See* Objs. at 9 (quoting Appellant's Br. at 42, *Commonwealth v. Johns*, No. 3060 EDA 2007 (Pa. Super.)).[8] However, the court finds that this singular reference to the concept of due process did not adequately present the "federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Keller v. Larkins*,

---

[8] This brief is also attached to the respondents' answer at exhibit H. *See* Doc. No. 7-2. Also, while Johns indicates that the quoted passage is located on pages 40 to 41 of the brief, *see* Objs. at 9, it appears that the passage is on page 42.

251 F.3d 408, 413 (3d Cir. 2001) (quoting *McCandless*, 172 F.3d at 261). Indeed, "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

Like in *Keller*, in which the court found that the habeas petitioner had failed to fairly present his federal due process claim, Johns devotes several pages in his brief to the issue of Dr. Callery's testimony, "[c]iting numerous state cases based on state law" and arguing that the preclusion of the testimony in question violated Rules 702 and 705 of the Pennsylvania Rules of Evidence. *See Keller*, 251 F.3d at 414; Appellant's Br. at 39–42. Not once in this section of the brief does Johns cite to a federal case, and those state law cases he references do not employ any federal constitutional analysis. *See* Appellant's Br. at 39–42. Additionally, Johns does not assert his claims "in terms so particular as to call to mind a specific right protected by the Constitution." *McCandless*, 172 F.3d at 261.

Although Johns argues that precluding Dr. Callery's testimony violated his right to "present defense evidence," Johns's argument rests largely on the contention that experts serve the useful function of "explain[ing] and debunk[ing] . . . common misperception[s]." Appellant's Br. at 40. Moreover, the case Johns cites to in support of this argument, *Commonwealth v. Stonehouse*, 555 A.2d 772 (Pa. 1989), grounds its decision entirely on state law grounds. *See id.* at 782–83. Similarly, in objecting to the trial court's refusal to allow Dr. Callery to testify to the full basis of his opinion, Johns cites only to Pennsylvania Rule of Evidence 705 and *Commonwealth v. Rounds*, 542 A.2d 997 (Pa. 1988), a state court decision that likewise rested only on state law grounds. *See* 542 A.2d at 999–1000. The basis for Johns's claim therefore appears to be state law evidentiary grounds, rather than any particular right under the federal Constitution. Finally, this claim,

involving a trial court decision to preclude certain testimony, does not allege a pattern of facts that is "well within the mainstream of constitutional litigation." *McCandless*, 172 F.3d at 261.

Because Johns failed to fairly present his federal claim to the state courts, and any attempt to raise it now would be time-barred, *see* 42 Pa. C.S. § 9545(b), the claim has been procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Although Johns argues there is cause for the default, he does not assert that he will be prejudiced by the court's failure to review his claim, and he only states in a conclusory manner that a fundamental miscarriage of justice will result if the default is not excused.[9] *See* Objs. at 9. As a result, the court finds that Johns has failed to carry his burden of demonstrating that the default is excused, and it therefore need not reach the merits of the claim. *See Lines*, 208 F.3d at 160.

Even if the court were to reach the merits of this claim, Johns would not be entitled to habeas relief because he has not demonstrated that any alleged errors in the trial court's evidentiary ruling were of "such magnitude as to undermine the fundamental fairness of the entire trial." *Keller*, 251 F.3d at 413 (citing *McCandless*, 172 F.3d at 262). In general, "the admissibility of evidence is a question of state law which is not cognizable under habeas review." *Rosario-Torres v. Lane*, Civ. No. 3:16-cv-1891, 2019 WL 5692537, at *8 (M.D. Pa. Nov. 1, 2019) (citing *Keller*, 251 F.3d at 416 n.2). Because the "Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules," *id.* (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)), such rulings are generally entitled to deference by the

---

[9] Regarding Johns's assertion of cause to excuse any procedural default, he indicates that the claim "is excused due to trial/appellate counsel's failure to alert the state courts to this federal due process claim." Objs. at 9 (citing *Martinez v. Ryan*, 566 U.S. 1 (2012)). It does not appear that Johns advanced a *Martinez* claim to excuse the procedural default prior to filing objections; therefore, it appears that this argument is waived. *See In re Nat'l Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3*, 971 F.3d 433, 444 (3d Cir. 2020) ("Arguments not presented to a magistrate judge and raised for the first time in objections to the magistrate's recommendations are deemed waived. A passing reference to an issue does not suffice to preserve it." (citations and internal quotation marks omitted)).

federal habeas court. *Id.* (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). However, a federal habeas court may review a state evidentiary ruling if a due process violation is alleged. *See Yancey v. Lockett*, Civ. A. No. 2007-CV-1963, 2008 WL 423485, at *7 (E.D. Pa. Feb. 14, 2008).

Johns has failed to demonstrate that the trial court's evidentiary rulings undermined the fundamental fairness of his entire trial. In this regard, the court notes that "the admission of expert scientific testimony is an evidentiary matter for the trial court's discretion." *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1046 (Pa. 2003); *see also United States v. Gibbs*, 190 F.3d 188, 211 (3d Cir. 1999) (noting that trial courts have "broad discretion to admit or exclude expert testimony"). Here, the trial court determined both that Dr. Callery did not have the requisite background or qualifications to testify as an expert on the suicide notes, and that the request that he opine on the "nature" of the suicide notes did not ask him to render an opinion within a reasonable degree of certainty. Tr. Ct. Op. at 37–38. The Superior Court, finding that the trial court had not abused its discretion, affirmed this determination on appeal. *See Pa. Super. Op. I* at 16–17. The trial court was well within its discretion to preclude Dr. Callery's testimony based on its assessment of his qualifications and its reasonable interpretation of the Pennsylvania Rules of Evidence governing expert testimony. The trial court's ruling does not offend due process. *See O'Brien v. Tice*, Civ. A. No. 19-3707, 2019 WL 8356733, at *16 (E.D. Pa. Dec. 23, 2019). As such, Johns's second set of objections to the report and recommendation are overruled.

### 3.  Objection To Judge Heffley's Determination That Trial Counsel Was Not Ineffective For Failing To Hire A Forensic Psychiatrist

In his third objection, Johns contends that Judge Heffley erred in rejecting his claim that trial counsel was ineffective for failing to hire a forensic psychiatrist. *See* Objs. at 11–25. During the PCRA proceedings, Johns's counsel hired Harry A. Doyle, M.D., a forensic psychiatrist. *See*

*id.* at 12. Johns asserts that Dr. Doyle's testimony would have purportedly established that a phone message Jones left for his father and another note Jones wrote, were suicide "notes." *See id.* at 11.

Johns includes three grounds in support of his objection to Judge Heffley's determination that counsel was not ineffective for failing to hire a forensic expert. First, he argues that Dr. Doyle's methodology was sound and his testimony admissible, with the implication that trial counsel's failure to present such testimony regarding Jones's state of mind amounted to ineffective assistance of counsel. *See id.* at 11–17. Second, Johns claims that it was unreasonable for trial counsel to engage and retain only a forensic pathologist, and that trial counsel failed to locate a proper expert due to improper cost considerations. *See id.* at 17–19. Finally, Johns contends that the outcome of the trial would have been different but for trial counsel's alleged errors. *See id.* at 18–25. The court finds that these objections all lack merit, and accordingly overrules Johns's third set of objections for the reasons set forth below.

As to Johns's first argument, the court agrees with Judge Heffley that evidentiary determinations such as that made by the trial court to exclude Dr. Doyle's testimony are "binding on a federal habeas court." R. & R. at 18 (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")). Nonetheless, the court notes that the trial court acted well within the bounds of its "broad discretion," *Gibbs*, 190 F.3d at 211, to exclude Dr. Doyle's testimony and fulfill its obligation to act as "gatekeeper" of proposed expert testimony. *See F.E.I. Co. v. United States*, 409 F. Supp. 3d 305, 315 (M.D. Pa. 2019).

As to Johns's second argument, the court again concurs with Judge Heffley that the mere availability of an alternate trial strategy—in this case, calling a forensic psychiatrist rather than a forensic pathologist—did not render trial counsel's performance constitutionally deficient. *See* R.

& R. at 18–19. Courts must be "'highly deferential' to counsel's reasonable strategic decisions and guard against the temptation to engage in hindsight." *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 689–90 (1984)). Indeed, this deference to counsel's reasonable strategic decisions "can be seen in numerous United States Supreme Court rulings following on the heels of *Strickland*." *Id.* (collecting cases). This deference is particularly evident with regard to the selection of expert witnesses, which is "a paradigmatic example of the type of strategic choice that, when made after thorough investigation of the law and facts[,] is virtually unchallengeable." *Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (internal quotation marks and brackets omitted) (quoting *Strickland*, 466 U.S. at 690). Given Dr. Callery's previous experience interpreting suicide notes and autopsies as a medical examiner, it was not unreasonable for trial counsel to select Dr. Callery on the (ultimately incorrect) understanding that his testimony would be admissible. Additionally, that cost considerations may have played a role in trial counsel's choice of experts did not render Johns's representation ineffective where defense counsel is "entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington v. Richter*, 562 U.S. 86, 107 (2011) (citations omitted).

Regarding Johns's final contention in support of the objections, the court finds, consistent with the report and recommendation, that Johns has failed to demonstrate that the outcome of the trial would have been different but for his trial counsel's alleged errors. *See Strickland*, 466 U.S. at 694; R. & R. at 19. As noted by Judge Heffley, jurors were presented with the same underlying information that Dr. Doyle examined in rendering his opinion. R. & R. at 19. They could have—but did not—render a verdict consistent with the defense's suicide theory. That they did not, the court finds, was not due to trial counsel's alleged ineffectiveness. Indeed, trial counsel was able to

elicit testimony from the Commonwealth's expert that the victim's letter "look[ed] good for a suicide note," and his trial counsel "strenuously argued the defense theory of suicide during closing arguments."  R. & R. at 17–18 (quoting *Commonwealth v. Johns*, No. 2022 EDA 2018, 2019 WL 3628794, at *6–7 (Pa. Super. Aug. 6, 2019)). Moreover, the evidence of Johns's guilt was such that Dr. Doyle's testimony, even if admissible, would not have made a difference in the outcome of the trial. Johns's third set of objections is therefore overruled.

### 4.    Objection To Judge Heffley's Finding That The Trial Court's Instructions To The Jury On Voluntary Manslaughter Were Proper

In his fourth objection to the R&R, Johns argues that Judge Heffley erred in finding that the trial court's instructions on voluntary manslaughter were proper. Specifically, he contends that the trial court's comments, which allegedly "t[oo]k[] away the possibility of voluntary manslaughter," Objs. at 26, violated Johns's due process right to a fair trial. *Id.* at 28.

The court finds that Johns has failed to meet his "heavy burden in challenging [the] allegedly defective jury instructions." *Gov't of V.I. v. Smith*, 949 F.2d 677, 684 n.7 (3d Cir. 1991) (internal quotation marks and citation omitted). As an initial matter, and as aptly noted by Judge Heffley, the trial court admonished the jury in its initial charge that it should not interpret any of the judge's comments as opining on whether anything in the case had been proven. *See* R. & R. at 21. As discussed above, courts presume that jurors follow the instructions given to them, *see Olano*, 507 U.S. at 740, and Johns has provided no reason why this court should depart from that well-established presumption. Additionally, contrary to Johns's representations, the trial court did not "take away" the possibility of voluntarily manslaughter—indeed, it presented it as one possible option for the jurors to consider:

> Now, voluntary manslaughter—neither party in this case has come forward with any specific evidence which would bring into play either of the two factors which the law recognizes is essentially taking away malice. However, you're the finders

of fact, you have the evidence in this case, and *I've instructed you on voluntary manslaughter* both because I think you have a right to know of *that verdict option* and because it will help you understand, if nothing else, by contrast and comparison, just how all of this whole of criminal homicide fits together.

Objs. at 22 (quoting May 18, 2007 Tr. at 15–17) (emphasis added).

Although Johns takes issue with the trial judge's comments regarding the lack of evidence provided by either party, the court agrees with Judge Heffley that the trial judge exercised restraint in his commentary and repeatedly emphasized that the jury was the ultimate finder of fact. *See id.* at 23. Given these repeated admonishments, which the jurors are presumed to follow, and the fact that the voluntary manslaughter option was presented as an option to the jury, the court finds that this claim lacks merit. Therefore, Johns's fourth objection to the R&R is overruled.

**5.     Objection To Judge Heffley's Conclusion That Trial Counsel Was Not Ineffective In Failing To Object To The Allegedly Defective Jury Instructions**

In his final objection to the report and recommendation, Johns argues that Judge Heffley's conclusion that trial counsel was not ineffective in failing to object to the allegedly defective jury instructions was error. *See id.* at 28. In support of this claim, he argues that his underlying claim regarding the voluntary manslaughter instructions has merit. *Id.* However, because the court agrees that the underlying claim lacks merit, trial counsel cannot be deemed ineffective for having failed to raise that claim. *See Real v. Shannon*, 600 F.3d 302, 310 (3d Cir. 2010). Thus, Johns's final objection to the R&R is overruled.

### III.     CONCLUSION

For the reasons set forth above, the court will overrule Johns's objections to the R&R because the court agrees with Judge Heffley that the claims raised in the section 2254 habeas petition are meritless or procedurally defaulted. The court also agrees with Judge Heffley's

recommendation that the court deny the habeas petition and decline to issue a certificate of appealability.

A separate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.